# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 12, 2003

## STATE OF TENNESSEE v. TOBY P. LEONARD

### Appeal from the Circuit Court for Giles County
### No. 10280     Stella Hargrove, Judge

───────────────

### No. M2002-01328-CCA-R3-CD - Filed April 8, 2003

───────────────

The defendant, Toby P. Leonard, entered pleas of guilt to aggravated assault and civil rights intimidation. As a part of the plea agreement, the defendant received Range I, consecutive sentences of six and two years, respectively, for an effective sentence of eight years. The trial court denied probation. In this appeal of right, the defendant argues that he should have been granted an alternative sentence. The judgment is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Toby P. Leonard.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; Mike Bottoms, District Attorney General; and Patrick Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 3, 2001, the defendant, who was driving a white pickup truck and was accompanied by a co-defendant, James R. Garner, Jr., struck the victim, Catherine J. Duke, as she was walking near her home on Happy Hill Road in Giles County. Although the defendant fled from the scene, he and his co-defendant were later arrested. An investigation established that the defendant, as he drove along the roadway, saw the victim, asked his co-defendant to take the steering wheel, and said, "Let's door that nigger." The defendant passed across the oncoming lane of traffic and opened the door, striking the victim as she stood on the shoulder of the road. The impact shattered the victim's ankle in three places, requiring at least two surgical procedures, hospitalization, and physical therapy. At the time of the hearing, the victim was partially disabled and suffered from fatigue and arthritis. She experienced significant pain, especially during the night, impairing her ability to sleep.

After recognizing that the defendant was eligible for an alternative sentence, the trial court observed that at the time of the offense, the defendant was on probation in the juvenile court for possession of marijuana, drug paraphernalia, and violation of curfew and had been ordered to complete a "reality" program as a part of his probationary terms. After concluding that the defendant had used alcohol and marijuana since the age of 13 and had been subjected to little in the way of parental guidance, the trial court denied an alternative sentence. The basis for denial was primarily the prior criminal history of the defendant, including his juvenile probation, and the seriousness of his crimes, which the trial court found "reprehensible, shocking, and senseless." Deterrence was also listed as a factor.

In this appeal, the defendant argues that the evidence was insufficient to overcome the favorable presumption for alternative sentencing. Because the co-defendant Garner received only one year in jail, the defendant also considered his sentence as disproportionate.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

An alternative sentence is any sentence that does not involve total confinement. See State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Because the sentence imposed is eight years or less, the trial

court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b). As a standard offender convicted of a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing, "absent evidence to the contrary." See Tenn. Code Ann. § 40-35-102(6). What constitutes such evidence can be found in Tennessee Code Annotated section 40-35-103, which provides, in pertinent part, as follows:

> Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar crimes;
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

Before a trial court may deny an alternative sentence based upon the circumstances of the offense, those circumstances "must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring [an alternative sentence]." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (quoting State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981)); see also State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

Deterrence may be a basis for the denial of an alternative sentence. Our supreme court in State v. Hooper, 29 S.W.3d 1, 10 (Tenn. 2000), ruled as follows:

> [W]e will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

Our high court also suggested several guiding factors for determining whether a need for deterrence is present and whether incarceration is "particularly suited" to achieve that goal:

> (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole;
> (2) whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;

(3) whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;
(4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective;
(5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12. Our supreme court cautioned that "because the 'science' of deterrence is imprecise at best, the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need." Id. at 10. Our high court observed that

> [d]eterrence is a complex psychological process, and the focus on deterrence through changes in the penalty structure or sentencing behavior represents but one part of the calculus. Section 40-35-103(1)(B) recognizes this reality as the language of the statute requires only that confinement be "particularly suited" to provide a deterrent effect, and it does not require proof that incarceration "will" or "should" deter others from committing similar crimes.

Id. at 9.

Initially, it is our view that there exists a need to deter hate crimes. Yet the record here does not otherwise support the presence of any of the listed factors. Under the guidelines of our supreme court, the proof fails to support deterrence as a basis for the denial of an alternative sentence. See Ashby, 823 S.W.2d at 170. There are other reasons, however, which would warrant denial.

The defendant, 17 years of age at the time sentence was imposed, had been transferred from the juvenile court to be prosecuted on charges which included attempted first degree murder, attempted vehicular homicide, aggravated assault, civil rights intimidation, leaving the scene of an accident, failure to give immediate notice of the accident, and violation of the driver's license law. By virtue of the plea agreement, five of the seven offenses were voluntarily dismissed by the state. The presentence report established that the defendant did not have a stable family life or positive social history; his parents, who were divorced when he was eleven, live in different states. He had difficulty in school, finishing only the eighth grade. The defendant's work record includes approximately one month as a waiter and three to four months as an employee of the Meadowbrook Nursing Home. He has experienced alcohol and drug abuse.

The record establishes that this was a racially motivated crime. The defendant randomly and spontaneously selected Catherine Duke as his victim. The crime was malicious, violent and absolutely unprovoked and could have resulted in the death of the victim. The injuries to the victim were serious and disabling, requiring surgical procedures and significant time in the hospital. The defendant led the attack and gained the cooperation of his co-defendant in the commission of his

crime.  In our view, the offenses qualify as "shocking, reprehensible, and offensive."  <u>See</u> <u>Cleavor</u>, 691 S.W.2d at 543.  Further, measures less restrictive than confinement had been recently applied to the defendant and those measure were unsuccessful.  <u>See</u> Tenn. Code Ann. § 40-35-103(1)(C).

       Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE